# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| VICKI HALTERMAN o/b/o LARRY E. HALTERMAN | * | CIVIL ACTION NO. 08-0004 |
| VERSUS | * | JUDGE JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED in part, and AFFIRMED in part.**

### Background & Procedural History

Larry E. Halterman protectively filed the current applications for Title XVI Supplemental Security Income payments and Title II Disability Insurance Benefits on July 14 and September 17, 1997, respectively. (Tr. 181-186, 44-46). He alleged disability since December 1, 1996, due to numbness in his peripheries, emphysema, his knee giving out, nerves, and illiteracy. (Tr. 44, 50). The claims were denied initially and upon reconsideration. (Tr. 27, 29, 33-36, 38-40, 187-194, 196-198). Thereafter, Halterman requested and received an August 17, 1998, hearing before an Administrative Law Judge ("ALJ"). (Tr. 199-231). However, in a December 14, 1998, written decision, ALJ Raymond Gollmitzer found that Halterman was not disabled under the Act. (Tr. 10-20).

Halterman unsuccessfully sought review before the Appeals Council, before filing suit in this court on August 3, 2000. (Tr. 5-6); *Halterman v. Commissioner, Social Security Administration*, Civil Action Number 00-1801 (W.D. La.). Pursuant to a March 7, 2001, Consent Judgment, the court reversed and remanded the matter for the limited purpose of reevaluating claimant's impairments and obtaining vocational expert testimony, if necessary. (March 7, 2001, Consent Judgment; Tr. 299). Upon remand from the district court, the Appeals Council vacated the prior administrative decision and remanded the matter to an ALJ for further proceedings. (Tr. 300-301).

Meanwhile, on July 20, 2000, Halterman filed a new application for Title XVI Supplemental Security Income payments. (*See*, Tr. 292E). The state agency apparently granted the new application and awarded Title XVI benefits with an onset date of August 1, 2000. *Id*. However, additional hearings were held before ALJs Nancy Griswold and Charles Lindsay on June 20, 2001, and March 7, 2002, respectively, in connection with Halterman's still unresolved 1997 applications. (Tr. 596-628, 582-595). In a June 18, 2002, partially favorable decision, ALJ Griswold awarded Title XVI benefits to Halterman with a disability onset date of August 1, 2000. (Tr. 292A-292M). However, she denied disability for the period prior to August 1, 2000. *Id*.[1]

Halterman sought review before the Appeals Council, but tragically he passed away on January 31, 2004, before the review board could act. (Tr. 330).[2] On July 31, 2004, the Appeals

---

[1] The decision effectively denied Halterman's Title II application in its entirely because his eligibility for Title II benefits expired in March 1999. *Id*.

[2] The death certificate listed the causes of death as cardiopulmonary arrest; liver failure – end stage liver disease; diabetes mellitus - non-compliant; and urinary tract infection. (Tr. 330).

2

Council posthumously granted Halterman's request for review, and affirmed the ALJ's decision that he was disabled as of August 1, 2000, but vacated the decision for the period prior to August 1, 2000, and remanded the matter for further consideration. (Tr. 315-317).

On August 30, 2004, Halterman's sole surviving daughter and heir, Vicki Halterman, substituted as claimant on behalf of her deceased father. (Tr. 318). Upon remand, a new hearing was held on June 20, 2005, before ALJ Thomas Bundy. (Tr. 559-581). In a February 22, 2006, written decision, ALJ Bundy found that Larry Halterman was not disabled during the relevant period. (Tr. 487-498). However, on June 10, 2006, the Appeals Council again assumed jurisdiction and remanded the case for further consideration. (Tr. 508-512).

On October 26, 2006, ALJ Osly Deramus held a fifth hearing in the matter. (Tr. 526-558). In a February 22, 2007, written decision, ALJ Deramus determined that Halterman had not been disabled during the relevant period, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that existed in substantial numbers in the national economy. (Tr. 245-261). Vicki Halterman again petitioned the Appeals Council to review the unfavorable decision. However, on October 26, 2007, the Appeals Council denied Halterman's request for review; thus ALJ Deramus's decision became the final decision of the Commissioner. (Tr. 232-234).

On January 3, 2008, Vicki Halterman sought review before this court.[3] She alleges the following errors:

---

[3] The record suggests that the instant suit was not filed within 60 days of the plaintiff's presumed receipt of the Commissioner's final decision. *See, Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Flores v. Sullivan*, 949 F.2d 109, 113 (5th Cir. 1991). However, by failing to raise the timeliness issue, the Commissioner has waived it. *See, Weinberger v. Salfi*, 422 U.S. 749, 763-764, 95 S.Ct. 2457, 2466 (1975) (parties may waive 60 day limitations period set forth in 42 U.S.C. § 405).

(1) The ALJ's residual functional capacity is not supported by substantial evidence; and

(2) in lieu of remand for further proceedings, the court should remand the matter for an award of benefits because the vocational expert confirmed that there was no work that Larry Halterman could have performed during the relevant period.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

5

an adjustment to other work in the economy.
*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

The Commissioner dismissed the remaining portion of Halterman's Title XVI claim (the period prior to August 2000) because the substituted claimant, Vicki Halterman, is not within the category of persons entitled to receive a deceased claimant's unpaid Title XVI benefits, i.e. she is not the claimant's surviving spouse or parent. *See*, Tr. 252; 20 C.F.R. 416.542(b).[4] Plaintiff has not provided any cognizable basis to overturn this dismissal; thus, the undersigned will recommend that Title XVI dismissal be affirmed.

With the dismissal of the Title XVI claim, the sole issue before the court is Halterman's eligibility for Title II benefits which requires a finding of disability prior to March 31, 1999, – the date that Halterman was last insured for benefits. In other words, the relevant disability period extends from December 1, 1996, – the alleged onset date, through March 31, 1999.[5]

---

[4] Larry Halterman and his wife were divorced on September 5, 2002. (Tr. 331).

[5] Of course, if disability is established during the relevant period, plaintiff will likely be entitled to receive the more valuable Title II benefits for the period that Halterman received Title XVI benefits (i.e. from August 2000 through his death in 2004).

6

## I. Steps Two and Three

The ALJ determined at Step Two of the sequential evaluation process that Halterman suffered from severe impairments of chronic obstructive pulmonary disease ("COPD"); diabetes mellitus with diabetic neuropathy; liver dysfunction, and alcohol abuse. (Tr. 252). He concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 253).

Critically, the ALJ failed to evaluate the severity of Halterman's alleged mental impairments. When evaluating the severity of mental impairments, the regulations require that a psychiatric review technique form be completed during the initial and reconsideration phases of the administrative review process. 20 C.F.R. § 1520a(e). The psychiatric review technique rates the degree of functional limitation in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 1520a(c). The ALJ must incorporate the pertinent findings and conclusions of the psychiatric review technique into his decision. *Id*. However, an ALJ's failure to complete a psychiatric review technique form is not a substantive error requiring remand-- provided that the ALJ's decision is adequately supported by the record, with due consideration of the different aspects of the claimant's mental condition. *McGehee v. Chater*, 1996 WL 197435 (5th Cir. Mar. 21, 1996) (unpublished) (citing, *Maya v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1984)). Here, the ALJ's decision is not so supported. *See*, discussion, *infra*.

## II. Physical Residual Functional Capacity

The ALJ determined that during the relevant period, Halterman retained the residual functional capacity to perform a wide range of light work, reduced by the ability only

7

occasionally to stoop, crouch, crawl, kneel, and balance. (Tr. 253). Halterman could also occasionally climb stairs, but never ladders, scaffolds, or ropes. *Id*.

### A. Medical Expert

In his residual functional capacity assessment, the ALJ stated that subject to two exceptions, he accorded "controlling weight" to the findings of non-examining neurologist, Susan Blue, M.D., whom the Commissioner retained in July 2005 as a medical expert to review the record and answer written interrogatories. (Tr. 474-483).[6] The ALJ's two stated reservations with Dr. Blue's opinion were his determinations that 1) Halterman retained the ability to lift/carry at the light exertional level (instead of the medium level); and 2) Halterman did not suffer any environmental limitations. (Tr. 255-256). However, the ALJ failed to reconcile, or even acknowledge, that his conclusion that Halterman could perform light work was incompatible with Dr. Blue's finding that Halterman could only stand and/or walk for at least two hours, but less than six hours in an eight hour day. (Tr. 479).[7]

---

[6] Dr. Blue completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 479-482). She indicated that from May 11, 1998, to August 1, 2000, Halterman could occasionally lift 50 pounds, frequently lift 20 pounds, and stand and/or walk *at least two hours in an eight hour day*. *Id*. (emphasis added). His ability to sit, however, was not affected by his impairments. *Id*. Pushing and pulling were limited by his lifting capacity. *Id*. All postural activities were limited to occasional. *Id*. Due to his peripheral neuropathy, Halterman's fine manipulation skills and ability to feel were limited to occasional. *Id*. His pulmonary disease also caused him to experience environmental limitations regarding exposure to temperature extremes, dust, humidity/wetness, hazardous machinery, and fumes, odors, chemicals, and gases. *Id*.

By assigning "controlling weight" to Dr. Blue's opinion, the ALJ was required to adopt her findings in his residual functional capacity assessment. (SSR-5p). However, opinions from sources other than treating sources are never entitled to "controlling weight." (Program Operations Manual System, DI 24515.004). The ALJ likely intended to assign "great weight" to Dr. Blue's opinion. *Id*.

[7] The form completed by Dr. Blue included a box to find that the claimant could stand and/or walk for "about 6 hours in an 8-hour workday." (Tr. 479). However, she left that box

8

Plaintiff contends that the ALJ further erred by rejecting the environmental limitations recognized by Dr. Blue. The ALJ declined to adopt Dr. Blue's environmental limitations because he assigned greater weight to a September 8, 1998, pulmonary function study reviewed by pulmonologist, Scott Irby, M.D. (Tr. 255, 171). The record reveals that Dr. Irby reviewed the pulmonary function study and opined that it was consistent with a mild to moderate obstructive ventilatory defect. (Tr. 171). The ALJ emphasized that Dr. Irby did not assign any limitations due to this impairment. (Tr. 255). However, the obvious purpose of Dr. Irby's report was to summarize the test results. There is no suggestion that he considered how or whether the mild to moderate obstruction would affect Halterman's ability to work.

The ALJ also failed to directly address Dr. Blue's finding that Halterman's peripheral neuropathy limited his ability to finger and feel to occasional. (Tr. 480). However, when the ALJ considered plaintiff's testimony concerning her father's manipulative limitations, he cited the relatively benign October 13, 1997, physical examination conducted by Hayan Orfaly, M.D. (Tr. 257, 115-116).[8] The ALJ further concluded that Halterman's fine manipulation skills were not impaired because clinic notes from September 2000 stated that Halterman's neuropathy was "mid palm." (Tr. 257, 394, 396). However, the note actually states "severe peripheral neuropathy - up to knees and mid-palm." (Tr. 396). The note does not explain whether "mid-palm" neuropathy would limit the ability to finger or feel. *Id*. Also, during a hospital admission

---

unchecked. *Id*. The full range of light work requires the ability to walk or stand for approximately *six* hours in an eight hour day. *Weary v. Astrue*, 2008 WL 3820989 (5th Cir. Aug. 15, 2008) (unpubl.). The latest vocational expert in this matter also testified that any position at the light level would require the ability to stand/walk for six hours in an eight hour day. (Tr. 556).

[8] Relying upon Dr.Orfaly's report, a non-examining agency neurologist opined in May 1998 that Halterman's peripheral neuropathy was not severe. (Tr. 480, 152). The ALJ did not reference this opinion; however, Dr. Blue did.

9

in January 2000, the examining physician noted that Halterman exhibited decreased sensation to his bilateral feet and fingers. (Tr. 404-406). On September 21, 2000, S. I. Courtman, M.D., examined Halterman and recorded that he described paresthesias of the extremities which was not then present, but that came and went. (Tr. 409).

In sum, the ALJ purported to base his residual functional capacity upon Dr. Blue's findings. He ended up, however, settling upon a residual functional capacity that materially deviated from Dr. Blue's findings, without substantial support for doing so. Even if the ALJ had adequately supported the discrepancies between his residual functional capacity assessment and Dr. Blue's findings, his purported reliance upon Dr. Blue was misplaced because her assessment did not contemplate the relevant period. Dr. Blue stated that her findings applied to the period from May 11, 1998, to August 1, 2000. (Tr. 482). Obviously this period begins during and ends after the December 1, 1996- March 31, 1999, period at issue. Moreover, due to the progressive nature of claimant's impairments, it is not improbable that Dr. Blue's findings might have differed had she considered the relevant, truncated eligibility period.[9]

It is clear that the Commissioner consulted Dr. Blue, in part, so she could review the medical record and provide a complete assessment of Halterman's impairments during the relevant period. (*See*, Tr. 474-478). Medical expert review was necessitated by claimant's medical history which suggested that his condition worsened over time. The difficulty is compounded by the lack of medical records documenting Halterman's condition between 1998 and 2000. In other words, the onset and course of claimant's peripheral neuropathy was

---

[9] The court notes that the interrogatories instructed Blue to complete more than one medical source statement if the claimant's limitations changed during the relevant period. (Tr. 477). Even so, Blue did not complete another medical source statement for the period prior to May 11, 1998.

ambiguous and required medical expert evaluation.[10] Having found however, that Dr. Blue's evaluation did not contemplate the relevant period, the instant record remains devoid of requisite medical assessment or corroborating evidence to support the ALJ's residual functional capacity determination. *See, Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).[11]

### B. Failure to Follow Prescribed Treatment

The ALJ stated that Halterman failed to follow his physicians' treatment recommendations that he stop smoking cigarettes and cease abusing alcohol. (Tr. 258). However, it is not clear to what extent the ALJ's denial was based upon this finding. Under the regulations, claimants must follow the treatment prescribed by their physicians if the treatment can restore the claimant's ability to work. 20 C.F.R. § 404.1530. If a claimant fails to follow prescribed treatment without good reason, the claimant will not be entitled to disability. *Id*.

---

[10] With slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1997) (quoting, SSR 83-20). In such cases, "when the medical evidence regarding the onset date of a disability is ambiguous and the [Commissioner] must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The [Commissioner] cannot make such an inference without the assistance of a medical advisor." *Spellman*, 1 F.3d at 362.

[11] Blue was the only medical professional to complete a medical source statement. Also, plaintiff's testimony did not support the ALJ's residual functional capacity assessment. (*See*, Tr. 526-558).

11

Here, the ALJ cited a study which linked cigarette smoking to the development of COPD. (Tr. 258 (citation omitted)). However, Halterman experienced COPD symptoms early-on during the relevant period, and there is no record evidence to establish that the symptoms would have significantly abated had he ceased smoking.

With regard to Halterman's alcohol consumption, the court observes that under the Social Security Act, as amended, an individual will not be considered disabled for purposes of disability insurance benefits if alcoholism or drug addiction was a contributing factor material to the Commissioner's determination that the individual is disabled. 42 U.S.C. § 423(d)(2)(C). "Drug or alcohol abuse is material to a disability if the ALJ would not 'find [the claimant] disabled if [the claimant] stopped using drugs or alcohol.'" *Brown v. Apfel*, 192 F.3d. 492, 499 (5th Cir. 1999) (quoting, 20 C.F.R. § 416.935(b)(1)).

Before considering whether drug and alcohol abuse is a contributing material factor, however, there must first be a finding of disability. *Oettinger v. Barnhart,* 2002 WL 31422308 (W.D. Tex. 9/4/2002) (citing, 20 C.F.R. §§ 416.935(a) and 404.1535(a)). Here, of course, the ALJ did not find Halterman disabled during the relevant period. In fact, the ALJ found that Halterman was capable of significant gainful activity despite his substance abuse. (Tr. 258). Although at least three physicians pondered the effects of Halterman's alcohol abuse, none of them were able to confidently resolve the issue, or to provide an assessment of his limitations had he stopped using alcohol. *See*, Tr. 397-398, 472, 477-478; *Brown, supra* ("nowhere in these records do any of [claimant's] doctors express an opinion as to what [claimant's] condition would be if [he] ceased abusing drugs or alcohol.").[12]

---

[12] It is also worth noting that in the decision awarding SSI benefits from August 1, 2000, ALJ Griswold determined that notwithstanding evidence of continued alcohol abuse, Halterman's alcohol consumption was not a material factor in her disability finding. (*See*, Tr.

The undersigned further observes that the Commissioner may not deny benefits for failure to comply with prescribed treatment unless the Commissioner first provides notice to the claimant. *Tristan v. Barnhart*, No. SA-05-CA-1223-OG, 2007 WL 496853, at *14 (W.D. Tex. Feb. 2, 2007); *Alcorta v. Barnhart*, No. SA-02-CA-0472, 2006 WL 3827003, at *11 (W.D. Tex. Dec. 28, 2006). Social Security Ruling 82-59 provides that "before [such] a determination is made, *the individual . . . will be informed of this fact and* of its effect on eligibility for benefits." SSR No. 82-59 (1982) (emphasis added). Second, the claimant "will be *afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so*." *Id*. (emphasis added); *see also* 20 C.F.R. § 416.930 ("If you do not follow the prescribed treatment *without a good reason*, we will not find you disabled . . .") (emphasis added). Here, there is no indication that notice was provided to Halterman, or that he was afforded the opportunity to demonstrate good cause for his alleged failure to comply with treatment.

## III. Mental Residual Functional Capacity

The instant record contains findings by at least three physicians confirming that Halterman suffered from mental impairments which affected his ability to work during the relevant period. The ALJ, however, failed to address any of this evidence. His implicit finding that Halterman did not suffer severe mental impairments is not supported by substantial evidence. The sole examining mental health physician, E. H. Baker, Ph.D., confirmed that Halterman suffered from depression and an anxiety disorder which imposed significant limitations on his ability to work.[13]

---

292J).

[13] Dr. Baker administered a mental status examination and intelligence testing on December 9, 1997. (Tr. 117-119). At that time, Halterman's chief complaint was diabetes, depression, and nervousness. *Id*. He stopped taking his medication because he could not afford

13

Relying upon Dr. Baker's mental status examination, two out of three non-examining agency physicians found that his mental impairments caused functional limitations. On March 18, 1998, Webb Sentell, M.D., completed a Mental Residual Functional Capacity Assessment. (Tr. 133-136). He indicated that Halterman suffered moderate limitations in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and to set realistic goals or make plans independently of others. *Id*.

On May 21, 1998, agency physician, Arron Suans, M.D., completed a Mental Residual Functional Capacity Assessment. (Tr. 137-141). He indicated that Halterman was moderately limited in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions or to perform at a consistent pace without unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from superiors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to respond appropriately to

---

it. *Id*. He smoked one pack of cigarettes per day. *Id*. He had a borderline IQ, and could not read, but his vocabulary was adequate. *Id*.
    Baker diagnosed depression, NOS; anxiety disorder, NOS; and to rule out learning disorder, NOS. *Id*. Baker observed that Halterman's understanding and memory were intact. *Id*. His sustained concentration and persistence, and social interaction, were adequate. *Id*. However, Halterman appeared to experience difficulties with social abilities in less structured settings. *Id*. Adaptation was marginal, and prognosis was guarded. *Id*. He was able to work at simple jobs with appropriate supervision. *Id*. However, he would have difficulty learning new tasks due to his limited cognitive ability and his inability to read. *Id*. His depression and anxiety prevented him from working adequately in a public setting. *Id*. Baker opined that Halterman would have difficulty working with peers. *Id*.

changes in the work setting; and to set realistic goals or make plans independently of others. *Id*.[14]
It is manifest that the ALJ ignored and failed to address these factors, although, in her interrogatory responses, Dr. Blue indicated that Halterman suffered from anxiety and depressive disorder. (Tr. 476).

It is axiomatic that the Commissioner is obliged to consider the findings of state agency physicians. 20 C.F.R. 404.1527(f); SSR 96-60. It is equally clear that the ALJ failed to fulfill that duty in this case, and that the omission materially affected the ALJ's residual functional capacity assessment. As a result, the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## IV. Remaining Steps

At Step Four of the sequential evaluation process, the ALJ determined that during the relevant period, Halterman was unable to return to his past relevant work. (Tr. 259). Accordingly, he proceeded to Step Five, and consulted a vocational expert ("VE"). In his hypothetical to the VE, the ALJ asked the VE to assume someone with the same educational and vocational background as the claimant, and with a residual functional capacity similar to that ultimately adopted by the ALJ. (Tr. 552-553). As discussed above, however, the ALJ's residual functional capacity assessment and, by extension, his hypothetical are not supported by

---

[14] Sentell and Suans also completed psychiatric review technique forms which confirmed that Halterman's mental impairments were severe. (Tr. 142-150, 155-163). In contrast, non-examining agency physician, Jack L. Spurrier, Ed.D., found that Halterman's mental impairments were not severe. (Tr. 120-128). Spurrier's opinion, however, contradicts Baker's examination findings, and thus, does not provide a basis for decision. "[A]n ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and *do not contradict those of the examining physician*." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)) (emphasis added).

substantial evidence. By relying on testimony elicited pursuant to a defective hypothetical question, the ALJ did not meet his burden of showing that Halterman could perform work that existed in substantial numbers during the relevant period. *See, Boyd v. Apfel*, 239 F.3d 698, 707-708 (5th Cir. 2001).[15] Accordingly, the Commissioner's determination that Halterman was not disabled during the relevant period is not supported by substantial evidence.[16]

## V. Reverse and Remand or Reverse and Render

Plaintiff urges the court to reverse with instructions to award benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

---

[15] The ALJ posed additional hypotheticals to the VE that included fine dexterity and environmental limitations. (Tr. 553-554). However, the VE opined that an ability to occasionally finger would preclude work. *Id*. Also, in response to another hypothetical that included the ability to stand for only two to six hours, the VE stated that the jobs that she had initially identified would be precluded. (Tr. 555-556).
The Commissioner suggests that it was plaintiff's burden to present additional hypotheticals to the VE that incorporated all of his alleged limitations. However, the Commissioner has the burden at Step Five. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). Moreover, the claimant's failure to point out problems with a defective hypothetical does not automatically salvage the hypothetical. *See, Boyd*, 239 F.3d at 707 (5th Cir. 2001) (explaining *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

[16] We need not reach plaintiff's remaining assignment(s) of error. The remaining issue(s) (e.g. cane use) may be addressed upon remand.

The court is not unsympathetic to plaintiff's concerns and understands her frustration with this case's prolonged trek through the adjudicative process.[17] Unfortunately, the court is not in a position to put the matter to rest. There remain too many unanswered questions regarding Halterman's impairments and their effects on his residual functional capacity. In fact, the progression of Halterman's impairments may warrant more than one residual functional capacity during the relevant period. Moreover, even if Halterman had a residual functional capacity which supported a disability determination, the adjudicator would have to determine whether alcoholism was a contributing factor material to that finding. 42 U.S.C. § 423(d)(2)(C). Additional medical expert testimony will be required to resolve these and perhaps other issues. Also, the adjudicator likely will have to solicit new vocational expert testimony and potentially resolve any inconsistencies between that testimony and the prior vocational expert testimony adduced in this matter.

For the foregoing reasons,

**IT IS RECOMMENDED** that the Commissioner's decision denying plaintiff's claim for Title II Disability Insurance Benefits be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herein.

**IT IS FURTHER RECOMMENDED** that the Commissioner's decision dismissing the plaintiff's claim for Title XVI Supplemental Security Income payments be **AFFIRMED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

---

[17] The decision to remand for further consideration is ameliorated to a certain extent by the fact that plaintiff is not seeking benefits due to her own disability. *Contrast, McQueen v. Apfel*, 168 F.3d 152, 156 (5th Cir. 1999) (reversed with instructions to award benefits where claimant was without disability benefits for years).

objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of January, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE